UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GERALD M. RICH                                                    PLAINTIFF/COUNTER DEFENDANT

v.                                                                CIVIL ACTION No. 3:16-cv-366-DPJ-LRA

ALEXANDRIA VICTORIA
SHEPPARD, et al.                                                  DEFENDANTS/COUNTER PLAINTIFFS

ORDER

This tort action is before the Court on Defendants Alexandria Victoria Sheppard's and James Patrick Sheppard's Motion to Dismiss [9] and Motion to Amend [28]; and Defendant Philip Thomas's Motion to Dismiss [10] and Motion for Sanctions [23].  For the reasons that follow, the Court grants the dismissal motions in part; grants Defendants' motion for leave to amend; but denies the motion for sanctions.

I.      Facts and Procedural History

This matter is a sad one and relates to the death of Patricia Hall Sheppard in May 2015. The following facts are asserted in the Complaint and assumed true under Federal Rule of Civil Procedure 12(c).

Plaintiff Gerald M. Rich says he entered into a "life partnership" with Patricia in the summer of 2007.  Compl. [1-1] ¶¶ 7–8.  At that time, she had two children from a previous marriage, Defendants Alexandria Victoria Sheppard ("Victoria") and James Patrick Sheppard ("James") (collectively "the Sheppards").  Id. ¶ 7.  During the relationship, Rich was involved in many aspects of Patricia's life, including her personal and financial matters.  Id. ¶¶ 9–10.  And it was through this involvement that Rich came to know Patricia's attorney, Defendant Philip

Thomas, during his representation of her in an unrelated legal action involving Regions Bank. *Id.* ¶ 10.

On December 11, 2014, Patricia was diagnosed with pancreatic cancer. *Id.* ¶ 11. And on December 30, 2014, she executed a Last Will and Testament bequeathing to Rich investment accounts valued around $180,000 and to her children the remainder of her estate. *Id.* ¶ 13. She also named Rich the executor and, along with her children, her attorney in fact. *Id.* The next month, on January 3, 2015, Patricia executed a second will identical to the first, changing only that Rich was to receive $125,000 outright. *Id.* Thomas prepared both wills.

With her health declining, Patricia was admitted to a hospital in Minnesota on March 27, 2015, accompanied by Rich and Victoria. *Id.* ¶ 21. When Rich returned home nearly two weeks later, he learned that the beneficiaries on the investment accounts previously bequeathed to him had been changed to the Sheppards. *Id.* ¶ 24. Rich called Patricia about this change and later spoke with Victoria, who told him that he "had upset her mother after which she hung up on him." *Id.* Then, on April 11, 2015, James met Rich at the Jackson, Mississippi, home Rich and Patricia shared, explaining that Rich was no longer welcome at the hospital where Patricia was admitted. *Id.* ¶ 26. James also told Rich that he was there to collect his mother's checkbook, cash, and other personal items. *Id.* That same day, unbeknownst to Rich, Patricia executed her third and final will, completely excluding Rich from any testamentary gift. *Id.* ¶ 27.

Over the next month, Rich attempted to establish contact with Patricia, the Sheppards, and Thomas to no avail. *Id.* ¶ 30. Then, on May 16, Patricia sent Rich a text message stating, "Help P." *Id.* ¶ 31. Rich "immediately" left his Louisiana home and drove to Mississippi. *Id.* But upon arriving at the Jackson home, he discovered that the locks had been changed, and a police officer instructed him to either leave or face trespassing charges. *Id.*

By this time, Patricia had moved to Hospice Ministries in Ridgeland, Mississippi. *Id.* ¶ 32. And when Rich attempted to visit her, Thomas and his wife "informed [Rich] that 'he was not to be there' and that the [previous] Power of Attorney was invalid." *Id.* Rich called a police officer, *id.*; but when the officer arrived, he went into the facility and "returned . . . to say that [Rich] was not wanted by the family" and that he should leave the premises or face trespassing charges. *Id.* ¶ 33. Rich neither spoke with nor saw Patricia again—she passed away on May 23, 2015. *Id.* ¶ 34.

Aggrieved by Defendants' alleged actions, Rich filed suit on April 8, 2016, in the Circuit Court of Hinds County, Mississippi. In his Complaint, Rich alleges four claims: (1) intentional infliction of emotional distress, (2) negligent infliction of emotional distress, (3) slander and defamation, and (4) fraud, against all Defendants. In their answer [8], the Sheppards assert counterclaims of (1) fraud in the execution and/or negligent misrepresentation and (2) conversion.

Victoria subsequently removed the case on diversity grounds on May 16, 2016. A few weeks later, on June 1, 2016, the Sheppards refiled their affirmative defenses as a motion to dismiss [9], without an accompanying memorandum of law. Thomas then moved for dismissal [10] the next day. He later filed his Motion for Sanctions [23] on September 15, 2016.

On January 30, 2017, the Court entered a show-cause order questioning whether diversity jurisdiction exists because Rich is a Louisiana resident and Defendant James pleaded in his Answer that he too resides in Louisiana. *See* Jan. 30, 2017 Order [26]. The Sheppards responded to the Court's Order on February 9, 2017, stating that a drafting error had occurred and that James actually resides in Mississippi. They likewise filed a motion to amend the error that same day. Rich filed no response to the Motion to Amend [28], and the time to do so passed

February 23, 2017.  The Motion to Amend [28] is therefore granted as unopposed.  *See* L.U. Civ. R. 7(b)(3)(E).  And in light of the amendment, the Court is satisfied that personal and subject-matter jurisdiction exist.

II.     Standard

As an initial matter, the parties offer factual allegations in their briefs that fall beyond the pleadings.  If the Court considers them, then it would be required to convert the motions to dismiss into motions for summary judgment.  Fed. R. Civ. P. 12(d).  Whether to do so is a matter left to the district court's "complete discretion."  *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 193 n.3 (5th Cir. 1988).  But here, many of the new allegations—mostly from Rich—are nothing more than assertions from counsel that lack evidentiary support and would therefore be insufficient under Rule 56(c).  Accordingly, the Court will not invoke Rule 12(d) and will disregard allegations that are not found in the pleadings.

In addition, Thomas and the Sheppards answered the Complaint before seeking dismissal, so technically their Rule 12(b)(6) motions must be considered under Federal Rule of Civil Procedure 12(c).  Regardless, the standard under either rule is the same.  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002).  Under that standard, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  To overcome a motion to

dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted).

III.   Analysis

As noted above, Rich brings four common-law tort claims against the three defendants. This Order addresses each in turn. But before looking at the specific claims, the Court will consider Defendant Thomas's argument that he acted as Patricia's attorney and therefore owed Rich no duty. As discussed next, the Court agrees with that argument to the extent Rich attacks Thomas's acts related to Patricia's estate planning. The remaining allegations will then be considered separately as to each cause of action.

A.   Thomas's Duty to Rich

The allegations against Thomas fall into two broad categories. First, the Complaint indicates that Thomas unduly influenced Patricia related to her estate planning. Second, Rich contends that Thomas shut Rich out of Patricia's life after becoming "personally involved." Compl. [1-1] ¶ 32. Turning to the first assertion, Rich generally says Thomas had a "higher duty because of his professional relationship with Patricia and with [Rich] in connection with the Regions lawsuit." *Id.* ¶ 39. But the Complaint does not plausibly allege that Thomas ever represented Rich, and there seems to be no dispute that he did not. So the question, in considering the claims related to Thomas's actions as Patricia's attorney, is whether an attorney owes a duty of care—much less a higher one—to someone other than his or her client.

In his opening memorandum, Thomas cites two Mississippi cases holding that an attorney has no duty to a client's adversary because it would create a conflict of interest. Def.'s

Mem. [11] at 10 (citing *James v. Chase Manhattan Bank*, 173 F. Supp. 2d 544, 551 (N.D. Miss. 2001); *Roussel v. Robbins*, 688 So. 2d 714, 725 n.4 (Miss. 1996)).  He therefore contends that he owed no duty to Rich.  Rich neither addresses Thomas's authority nor offers countervailing authority on this point, and he instead relies on the general reasonable-care standard that applies in most contexts.  *See* Pl.'s Mem. [18] at 6 (citing *McIntosh v. Victoria Corp.*, 877 So. 2d 519, 523 (Miss. Ct. App. 2004)).  Thomas's argument is essentially unrebutted and carries greater weight.

That said, Thomas's authority is not in this exact context, and neither the parties nor the Court has found a Mississippi case that is substantially similar.  Thomas's conflict-related argument does, however, find some support in *First National Bank of Durant v. Trans Terra Corp. International*, where a lender sued an attorney related to his work on a title opinion for the borrower.  142 F.3d 802, 805 (5th Cir. 1998).  It must be noted that *First National Bank of Durant* ultimately turned on a Texas privity rule that may conflict with Mississippi Code section 11-7-20.  Nevertheless, the policy addressed in *First National Bank of Durant* dovetails with the conflict-of-interest concerns that could preclude an attorney's duty to an adversary under Mississippi law.  Specifically, the court noted three policy issues:

> (1) "potential tort liability to third parties would create a conflict during the estate planning process, dividing the attorney's loyalty between his or her client and the third-party beneficiaries;" (2) the privity requirement "will ensure that attorneys may in all cases zealously represent their clients without the threat of suit from third parties compromising that representation;" and (3) "[w]ithout this 'privity barrier' . . . clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability."

*Id*. at 810 (quoting *Barcelo v. Elliott*, 923 S.W.2d 575, 577–79 (Tex. 1996)).

These concerns exist regarding Thomas's work for Patricia on her estate.  For example, the Court assumes under Rule 12(c) that Rich was Patricia's loving life partner interested only in

6

her welfare, but her attorney, when acting within his designated role, should be free to question whether that is true and advise his client accordingly. If an attorney concludes that a potential beneficiary, or someone exercising the power of attorney, is attempting to take advantage, the attorney must be free to offer that advice without fear that the third-party will later sue for emotional distress. While there are exceptions, the Court concludes in this context that the claims related to alleged undue influence in Patricia's estate planning fail as a matter of law and are dismissed with prejudice. The Court will, however, further consider the claims related to Thomas's alleged acts in shutting Rich out of Patricia's life.

B. Plaintiff's Claims

i. Intentional Infliction of Emotional Distress (IIED)

Under Mississippi law, a plaintiff asserting an IIED claim must show:

1. The defendant acted willfully or wantonly towards the plaintiff by committing certain described actions;
2. The defendant's acts are ones which evoke outrage or revulsion in civilized society;
3. The acts were directed at or intended to cause harm to the plaintiff;
4. The plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and
5. Such resulting emotional distress was foreseeable from the intentional acts of the defendant.

*J.R. ex rel. R.R. v. Malley*, 62 So. 3d 902, 906–07 (Miss. 2011). "Meeting the requisite elements for a claim for [IIED] is a tall order in Mississippi." *Jenkins v. City of Grenada, Miss.*, 813 F. Supp. 443, 446 (N.D. Miss. 1993). "[IIED] claims do not lie for mere insults, indignities, threats, annoyances, petty oppression, or other trivialities." *Hunt v. Wal-Mart*, No. 1:04CV733-WJG-JMR, 2006 WL 231632, at *8 (S.D. Miss. 2006) (internal quotation marks omitted).

7

a.     Philip Thomas

Excluding his role as Patricia's estate-planning attorney, Rich seems to premise the IIED claim against Thomas on the allegation that Thomas shut Rich out of Patricia's life, culminating in the exchange at the hospice facility when Thomas allegedly told Rich to leave.  *See* Compl. [1-1] ¶ 36.  In candor, the Court has struggled to determine whether this aspect of the claim can survive under Rule 12(c).  As noted, IIED claims are "a tall order" under Mississippi law. *Jenkins*, 813 F. Supp. at 446.  They are also fact specific.  *See*, *e.g.*, *Hobson v. Dolgencorp*, 142 F. Supp. 3d 487, 493 (N.D. Miss. 2015).

Thomas allegedly told Rich, "he was not to be there," which in isolation falls below the threshold of actionable conduct.  But there are other facts contained in the Complaint that place that statement into context.  As stated, the Court must assume those factual averments are true *and* view them in a light most favorable to Rich.  *See Martin*, 369 F.3d at 467.  And in that light, the Court must assume that (1) Rich and Patricia were in a loving, committed relationship, Compl. [1-1] ¶¶ 7−8; (2) Thomas and his wife had become personally involved with Patricia's life, *id.* ¶ 10; (3) on May 16, 2015, Patricia reached out to Rich by texting him, "Help P," *id.* ¶ 31; (4) Rich immediately drove to Mississippi from his home in Louisiana to answer her call for help, only to find that he had been locked out of the home they shared in Jackson and would be arrested if he did not leave, *id.*; and (5) when he arrived at the hospice facility "soon" thereafter, Thomas and Thomas's wife told him he was "not to be there," thus preventing him from ever again seeing or speaking with Patricia who died the following week, *id.* ¶¶ 32, 34. Thus, according to Rich, Thomas intentionally prevented him from answering his soulmate's deathbed call for help.

While there will certainly be other sides to this story, the Court must now assume these facts are true and view them in the light most favorable to Rich. Consequently, the Court concludes that the claim should proceed. As the Fifth Circuit has said regarding Rule 12(b)(6), the "standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556). Once that occurs, the issues may become more clear. Accordingly, while the Court concludes that Thomas's conduct when he represented Patricia in her estate planning is not actionable, the allegation that he committed IIED by shutting Rich out of her life should move to the next stage.[1]

      b.      Victoria and James Sheppard

Turning to the remaining Defendants, Rich alleges that the Sheppards intentionally (1) took advantage of Patricia's known condition through coercion and undue influence and (2) intentionally disregarded Patricia's condition and her "close relationship" with Rich, knowing that Rich was her trusted financial agent. Compl. [1-1] ¶ 36. In their motion, the Sheppards focus on the second allegation. They argue that their actions "may have annoyed" Rich, but it is still insufficient to state a claim. Def.'s Mot. [9] at 11. In other words, the conduct was not sufficiently egregious.

But the Sheppards do not fully account for the actual facts alleged against them. First, they do not address the background facts cited in the previous section. Second, the Complaint

---

[1] The Court acknowledges Thomas's statute-of-limitations argument, but Thomas's encounter with Rich at the hospice facility occurred in May 2015, which falls within the one-year statute for intentional torts. Also, it is possible that Thomas acted, at other times, in his capacity as Patricia's attorney, but that is not yet clear and will require more analysis at the summary-judgment stage.

offers specific facts linking the Sheppards to the more general facts and claims related to shutting Rich out of Patricia's life. For example, James allegedly told Rich that he was not wanted and gathered his mother's belongings from the Jackson home. Compl. [1-1] ¶ 26. And Victoria allegedly told Rich he was upsetting her mother and hung up on him. *Id.* ¶ 24. These facts would fall short if viewed in isolation, but placed in context by other properly asserted facts, they link Defendants to a plausible IIED claim—at least at this early stage of the proceedings. *See in re S. Scrap Material Co., LLC*, 541 F.3d at 587.

Having said that, the Sheppards and Thomas both argue that any claims contesting the validity or enforceability of Patricia's will are proper only in the existing Chancery Court case. The Court agrees that testamentary issues should not be raised in this action. *See* Miss. Code. Ann. § 91-7-1; *see also Ellzey v. McCormick*, 17 So. 3d 583, 587 (Miss. Ct. App. 2009) ("Article 6 section 159 of the Mississippi Constitution of 1890 provides that the chancery court has full jurisdiction in matters testamentary and of administration."). Any such claims are dismissed with prejudice.

    ii. Negligent Infliction of Emotional Distress (NIED)

Rich asserts NIED claims against Thomas and the Sheppards, alleging that they were negligent in "wholly disregard[ing] the long-standing practices of [Rich], Patricia, and their relationship, both business and personal." Compl. [1-1] ¶ 39. He therefore argues that each individual had a "duty to conduct themselves to act in a reasonably careful manner so as not to violate the rights and safety of others" and that Thomas had a "higher duty" given his alleged "professional relationship" with Patricia and Rich. *Id.*

"The elements of negligence—duty, breach, causation, damages—are an essential element of a claim for [NIED]." *Williams v. Rogers*, No. 2:14-CV-116-KS-MTP, 2014 WL

6675425, at *2 (S.D. Miss. Nov. 24, 2014) (citing *Harried v. Krutz*, 813 F. Supp. 2d 835, 841–42 (S.D. Miss. 2011) and *Blake v. Wilson*, 962 So. 2d 705, 715 (Miss. Ct. App. 2007)). Specifically, a plaintiff must show "the existence of a duty to conform to a specific standard of conduct for the protection of others against the unreasonable risk of injury." *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 174 (Miss. 1999) (internal quotation marks omitted). "Whether a duty exists in a negligence case is a question of law to be determined by the court." *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 244 (5th Cir. 2012) (applying Mississippi law) (internal quotation marks and citations omitted).

a. Philip Thomas

Thomas argues that Rich fails to establish duty and breach, and he notes that a NIED claim "requires substantial proof for recovery." Def.'s Mem. [11] at 8 (citing *McGuffie v. Herrington*, 966 So. 2d 1274, 1278 (Miss. Ct. App. 2007)). But *McGuffie v. Herrington* was decided on summary judgment. Here, Thomas is before the Court under Rule 12(c), which simply asks whether enough facts are pleaded to state a plausible claim. *See in re S. Scrap Material Co., LLC*, 541 F.3d at 587. For the stated reasons regarding the IIED claim, the NIED claim stemming from Thomas's alleged acts in shutting Rich out of Patricia's life can proceed. The claims related to his representation regarding her estate are dismissed with prejudice.

b. Victoria and James Sheppard

The only argument the Sheppards specifically make regarding this claim in their initial motion is that they "owed no duty to [Rich] to regard his 'relationship' with Patricia" because Rich and Patricia never wed. Defs.' Mot. [9] at 11–12. But the Sheppards fail to support this claim. Instead, they simply note that "Mississippi does not recognize common law marriage." *Id.* at 11. Otherwise, they provide neither authority nor analysis to show that they owed Rich no

duty to act as a reasonably prudent person in their actions towards him.  *See Dr. Pepper Bottling Co. of Miss. v. Bruner*, 148 So. 2d 199, 201 (Miss. 1962).  Their argument therefore fails at this stage.

The Sheppards offer new arguments in their reply, but the Court will not consider them at this time.  When the Sheppards moved to dismiss, they merely refiled their answer and affirmative defenses without a supporting memorandum.  After Rich pointed this out, the Sheppards countered that memoranda are not required for affirmative defenses.  Defs.' Reply [19] at 3.  They are only partially correct.  While no memorandum is required with the initial pleading, Uniform Local Rule 7(b)(2)(A) states that affirmative defenses must be asserted in a separate motion to be recognized by the Court, and Rule 7(b)(4) requires a supporting memorandum for all motions.  Without an opening brief or legal analysis, some of Defendants' positions are not explored until rebuttal.  And generally speaking, courts refuse to consider new arguments raised in reply.  *See Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008).

       iii.     Defamation: Slander

To prove slander under Mississippi law, a plaintiff must show the following:

> (1) a false and defamatory statement concerning the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Bros. v. Winstead*, 129 So. 3d 906, 928 (Miss. 2014).  A complaint "must provide allegations of sufficient particularity so as to give the . . . defendants notice of the nature of the complained-of statements."  *Chalk v. Bertholf*, 980 So. 2d 290, 297 (Miss. Ct. App. 2007), *cited in Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 492 (5th Cir. 2013).  Thus, "[i]n Mississippi, a complaint alleging defamation must set forth the statements, paraphrased or verbatim, that constituted the

defamation." *Cooper v. Paragon Sys., Inc.*, No. 5:08-CV-169-DCB-JMR, 2008 WL 4187942, at *3 (S.D. Miss. Sept. 5, 2008); *c.f. Chalk*, 980 So. 2d at 297 ("[A] plaintiff must set forth . . . information . . . regarding the statements, to whom the statements were directed, by whom the statements were made, and how the statements were slanderous." (internal quotation marks omitted)).

Here, Rich alleges that Thomas and the Sheppards "made false statements in which [they] accused [Rich] of misconduct in his relationship with Patricia." Compl. [1-1] ¶ 43. Both Thomas and the Sheppards argue that the Complaint fails to provide any information regarding these allegedly slanderous statements. Def.'s Mem. [11] at 10–11; Defs.' Mot. [9] at 12. The Court agrees; the Complaint does not set forth the alleged defamatory statements with any detail whatsoever. Without this information, Thomas and the Sheppards must analyze the nine years Rich was in a relationship with Patricia to attempt to surmise what statements accused Rich of misconduct.

Finally, the Court rejects Rich's argument in response that "[a]ccusations of dishonesty and misconduct are actionable per se." Pl.'s Resp. [18] ¶ 10. First, Rich fails to cite a paragraph from the Complaint containing an allegation that anyone accused him of being "dishonest," and the Court found no such averment. Second, assuming without deciding that Rich made those averments and that they would be per se actionable, Rich must still plead non-conclusory facts showing a plausible claim. *See Twombly*, 550 U.S. at 555. These claims are dismissed without prejudice.

    iv.  Fraud

Thomas and the Sheppards contend that Rich fails to allege fraud with requisite particularity. Defs.' Mot. [9] at 12–13; Def.'s Mem. [11] at 11–12. Rich concedes that this

13

admitted failure is fatal to his claim and has withdrawn it.  Pl.'s Mem. [18] ¶ 14; Pl.'s Mem. [15] ¶ 5.  Accordingly, the Court dismisses this claim with prejudice.

      C.      Plaintiff's Motion to Amend

In both his dismissal-motion responses, Rich makes alternative requests for leave to amend his Complaint.  Pl.'s Mem. [18] ¶ 5; Pl.'s Mem. [15] ¶ 2.  In *Hart v. Bayer Corp.*, the Fifth Circuit explained that leave to amend should be considered after granting a motion to dismiss:

> [A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing. Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so.

199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted).

Three problems prevent the Court from granting leave to amend at this time.  First, Rich violated Uniform Local Rules 7(b)(3)(C) and 7(b)(4) by failing to docket a separate motion seeking leave to amend with a supporting memorandum.  Second, he did not comply with Uniform Local Rule 15, which provides that "[a] proposed amended pleading must be an exhibit to a motion for leave to file such pleading."  Third, Rich's responses fail to demonstrate a valid basis for amendment in some respects.  So absent a properly supported motion, the Court refuses to rule on Rich's request.

That said, Rich is still entitled to an opportunity to perfect his pleadings as to his slander/ defamation claims, which were dismissed without prejudice.  *See id.*  Accordingly, he is given ten days from the date of this Order to file a properly supported motion to amend that attaches a proposed amended complaint.  Rich should address the issues raised in Defendants' briefings as leave will be denied if the claims remain futile.

D.   Motion for Sanctions

Thomas [23] and the Sheppards [9] seek sanctions against Rich and his counsel under Federal Rule of Civil Procedure 11, Mississippi Rule of Civil Procedure 11, and the Mississippi Litigation Accountability Act of 1988 ("MLAA").[2] They request costs and attorney's fees as a sanction. Def.'s Mot. [23] ¶ 11; Defs.' Mot. [9] at 13. This Court proceeds cautiously when considering sanctions motions and, in doing so, finds that sanctions are not appropriate in this case.

To begin, Federal Rule 11 does not apply to a complaint filed in state court and thereafter removed. *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 245 (5th Cir. 1998). And the language of the MLAA reads that "the court shall award, *as part of its judgment* and in addition to any other costs otherwise assessed, reasonable attorney's fees and costs." Miss. Code. Ann. § 11-55-5 (emphasis added). No judgment has been awarded in this removed action, so that claim is dismissed without prejudice.

This Court may grant sanctions under Mississippi Rule 11. *See Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000) ("[F]ederal courts have applied state sanctions rules to pleadings filed in state court before removal. We believe that this is appropriate." (citations omitted)). Under that rule, a party or his attorney may be sanctioned if a pleading is (1) frivolous or (2) for the purpose of harassment or delay. Miss. R. Civ. P. 11. Whether a claim is frivolous under Rule 11 is found "only when, objectively speaking, the pleader or movant has no hope of success." *Leaf River Forest Prod., Inc. v. Deakle*, 661 So. 2d 188, 196–97 (Miss. 1995). This

---

[2] The Sheppards move for sanctions under "Rule 11" and the MLAA. Defs.' Mot. [9] at 13. Out of an abundance of caution, the Court construes this request as one under Federal Rule 11 and Mississippi Rule 11.

occurs "when a defendant has a complete defense to the claim, such as the bar of a statute of limitations or when the bar of collateral estoppel applies." *Abney v. State Farm Fire & Cas. Co.*, No. 1:07CV711-LTS-RHW, 2008 WL 2331098, at *5 (S.D. Miss. June 4, 2008) (citations omitted).

Because the Court finds that Rich's IIED and NIED claims are plausible, the only claims that could warrant sanctions are the slander and fraud claims. As to slander, that claim was dismissed without prejudice, so the Court cannot now say that it had "no hope of success." *Leaf River Forest Prod., Inc.*, 661 So. 2d at 196–97. Nor is the Court willing to say the claim was filed for purposes of harassment. As to the fraud claim, it is true Rich withdrew it. But that is not alone sufficient to find a violation. *See Cain v. Cain*, 967 So. 2d 654, 666 (Miss. Ct. App. 2007). Moreover, the fact that Rich so quickly withdrew the claim militates against sanctions. Finally, there is some suggestion under Mississippi law that sanctions are not appropriate under Rule 11 when only some of the claims can be viewed as frivolous. Indeed, the text of Rule 11 deals with frivolous or harassing "motion[s] or pleading[s]." *See also Nichols v. Munn*, 565 So. 2d 1132, 1137 (Miss. 1990) (holding that Rule 11 sanctions were imposed in error where it "was certainly a weak case, but hardly so devoid of any claim of liability as to be frivolous"). Regardless, sanctions are not warranted in this instance.

IV.     Conclusion

The Court has considered all the parties' arguments. Those not specifically addressed do not change the outcome. For the foregoing reasons, the Sheppards's Motion to Dismiss [9] is granted in part and denied in part; Rich's IIED and NIED claims against them may proceed, but his slander and fraud claims are dismissed. Their Motion to Amend [28] is likewise granted. The Court also grants in part and denies in part Thomas's Motion to Dismiss [10]. Rich's IIED

and NIED claims related to Thomas's alleged acts in shutting Rich out of Patricia's life may proceed.  But the claims related to Thomas's alleged undue influence in Patricia's estate planning are dismissed; and the slander and fraud claims against him are similarly dismissed.  Finally, Thomas's Motion for Sanctions [23] is denied.

With respect to Rich's desire to amend his Complaint as to his slander/defamation claim, he must file a properly supported motion within ten days.  Failure to do so will result in the dismissal of that claim with prejudice and without further notice.  Finally, the parties are instructed to contact the Magistrate Judge and set the matter for a status conference to establish a new scheduling order.

**SO ORDERED AND ADJUDGED** this the 28th day of February, 2017.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE