UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GERALD M. RICH                                                                          PLAINTIFF

V.                                                      CIVIL ACTION NO. 3:16-CV-366-DPJ-LRA

ALEXANDRIA VICTORIA SHEPPARD,
JAMES PATRICK SHEPPARD, PHILLIP THOMAS,
AND JOHN DOES 1-10                                             DEFENDANTS

ORDER

This tort action is before the Court on Plaintiff Gerald Rich's Motion for an Extension of Time [81] and Motion to Re-Open Discovery [85]. For the reasons that follow, the Court denies both motions to the extent they seek to amend the scheduling order but grants Rich an extension of time to respond to the pending summary-judgment motions.

I.        Background

Patricia Sheppard died in May 2015, leaving two children—Defendants Victoria and Bud Sheppard. She also left Plaintiff Gerald Rich, who describes himself as her "life partner" but not her husband. In very basic terms, the Sheppard Defendants and Rich have disputed the final months of Patricia's life in two civil suits. The first is a will contest in chancery court. The second is this case in which Rich says Victoria and Bud, along with Patricia's attorney Phillip Thomas, influenced Patricia to shut Rich out of her life and remove him from her will. The Sheppard Defendants accuse Rich of fraud and conversion, which they assert as counterclaims.

On February 28, 2017, the Court narrowed the issues in the present suit, dismissing some claims under Federal Rule of Civil Procedure Rule 12(c) while allowing Rich to proceed on claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). *See* Feb. 28, 2017 Order [31] at 16–17.

After resolving the Rule 12(c) issues, the Court entered a Case Management Order setting Plaintiff's expert-disclosure deadline for May 3, 2017. *See* Mar. 7, 2017 Order [33]. The Court also set discovery and motion deadlines but later extended them to October 13 and 27 respectively. During the discovery period, the parties participated in written discovery and deposed Rich, the Sheppard Defendants, and Thomas. Once discovery closed, Defendants filed separate summary-judgment motions on October 27. *See* Thomas Mot. [71]; Sheppard Mot. [73].

Rich initially requested two short extensions of time to respond to these motions, but on December 7, 2017, his attorney sought leave to withdraw due to health concerns. *See* Pl.'s Mot. [77]. The Court granted that request on December 21, 2017, and gave Rich 60 days to retain new counsel. *See* Dec. 21, 2017 Text-Only Order. Then, on February 16, 2018, Wayne Ferrell, Jr., filed a Notice of Appearance [80] on Rich's behalf. Immediately afterwards, Rich filed two motions seeking 30 days to designate experts, 60 days of additional discovery, and 90 days to respond to Defendants' dispositive motions. *See* Pl.'s Mots. [81, 85]. Defendants oppose these requests. *See* Def.'s Resp. [88]; Defs.' Joinder in Doc. [89]. Neither side supported their positions with legal memoranda or legal authority.

II.     Standards

Rich's motions collectively seek to amend the scheduling order so he can retain experts and reopen discovery before responding to Defendants' pending summary-judgment motions. The Fifth Circuit faced the same issue in *Leza v. City of Laredo*, observing that

> [u]nder [Federal] Rule [of Civil Procedure] 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension. Specifically, courts consider four factors in determining whether to allow a scheduling modification for good cause under Rule 16(b): (1) the explanation for

2

the failure to complete discovery on time, (2) the importance of the amendment, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice.

496 F. App'x 375, 376 (5th Cir. 2012).

Rule 56(d) raises similar issues as to requests for additional discovery before responding to summary-judgment motions. The rule states, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to obtain affidavits or declarations or to take discovery." Fed. R. Civ. P. 56(d).[1]

> Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose. Nevertheless, non-moving parties requesting Rule 56(d) relief may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts. Instead, the non-moving party must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.

*Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (internal citations and quotation marks omitted).

Finally, "district court judges have power to control their dockets by refusing to give ineffective litigants a second chance to develop their case." *Leza*, 496 F. App'x at 376–77 (citations and quotation marks omitted). Thus, parties responding to summary-judgment motions "must diligently pursue relevant discovery—the trial court need not aid non-movants who have occasioned their own predicament through sloth." *Wichita Falls Office Assocs. v. Banc One Corp.*, 978 F.2d 915, 919 (5th Cir. 1992).

---

[1] Rich actually cites Rule 56(f) for this request, but Rule 56 was amended in 2010, moving this provision to Rule 56(d).

III.     Analysis

Given the overlap between the Rule 16(b)(4) and Rule 56(d) requirements, this Order will address the motions under Rule 16(b)(4), picking up the Rule 56(d) issues along the way.

A.      The Explanation

Rich offers two reasons why the discovery he seeks was not completed on time. First, his new attorney "conducts cases differently than Plaintiff's previous counsel." Pl.'s Reply [86] at 1. But "[t]here is no principle that each new attorney for a litigant must have an independent opportunity to conduct discovery. Shortcomings in counsel's work come to rest with the party represented." *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

Rich next says that his first attorney, Beverly Poole, had medical issues which impacted her effectiveness. While Poole did withdraw for health reasons in December 2017, the argument does not withstand scrutiny. To begin, Poole was fully engaged in the case before she withdrew. Poole first succeeded in avoiding total dismissal under Rule 12(c). She then participated in a March 7, 2017 case-management conference and an April 6 status conference. Within the next three days, Poole propounded six sets of written discovery. Later, she responded to Defendants' first and second rounds of written discovery. And—significant to Rich's motion to set a new expert-disclosure deadline—Poole served a timely Notice of Expert Disclosures on May 1. This is not a case where the first attorney simply missed the expert-disclosure deadline. After these preliminary matters, Poole participated in four depositions, three of which she noticed. Finally, when she did withdraw, Poole provided five boxes of documents to Rich's new lawyer, who has apparently not completed his review of what she produced. Pl.'s Mot. [85] at 1.

So by the time Poole's health motivated her to withdraw, she had filed a notice of expert disclosure and completed discovery. It was not until seven months after that disclosure—and

after discovery closed—that she sought leave to withdraw. On this record, Rich has not shown that Poole's health weighs in favor of finding good cause to extend the expert and discovery deadlines.

B. Importance of the Amendment

Even assuming Poole's health provides cause, Rules 16(b)(4) and 56(d) both require Rich to explain the importance of the requested delays. *See Leza*, 496 F. App'x at 376. In the Rule 56(d) context, this means Rich must provide "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist *and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion*." *Am. Family Life Assur. Co. of Columbus*, 714 F.3d at 894 (emphasis added). Rich fails this test.

As a reminder, Rich believes Defendants manipulated Patricia to shut Rich out of her life and remove him as a beneficiary to her assets. From that theory, Rich has remaining claims for IIED and NIED. Feb. 28, 2017 Order [31] at 16–17. Defendants seek summary judgment. In addition, the Sheppard Defendants seek summary judgment on their counterclaim for conversion. They say Patricia removed Rich as a beneficiary to her Schwab investment account, after which Rich accessed the account and modified it to leave himself 98% and Victoria and Bud 1% each.

Rich says he cannot respond to those motions until he names additional experts and obtains written discovery and deposition testimony. For starters, Rich wants "Defendants [to] completely and fully respond to Plaintiff's Requests for Production of Documents and Interrogatories." Pl.'s Reply [91] at 4. But Rich never moved to compel responses before the discovery deadline. *See* L.U. Civ. R. 7(c) ("A party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court and time

5

to effectuate the court's order before the discovery deadline."). And even now, he neglects to identify which specific requests Defendants failed to answer or how they impact his ability to respond to Defendants' legal arguments.

As for experts and depositions, Rich's clearest statements on what he wants and why come in his reply. He states there that he wants to depose "Patricia Sheppard's treating medical physicians, medical care providers, and other individuals . . . [and] conduct[] some discovery" before responding to the pending motions. Pl.'s Reply [91] at 3. He further says that he needs this

> because Patricia Sheppard was extremely ill and Plaintiff, to prepare properly, needs all of the medical records of Patricia Sheppard at all of the treating medical facilities, including but not limited to the various hospitals and the various medical providers, hospice, and treatment centers to establish that Patricia Sheppard was not capable of making rational decisions, which made her more susceptible to be confined and controlled by the Defendants, Philip Thomas, Alexandria Victoria Sheppard, and James Patrick Sheppard. The Defendants, with Patricia Sheppard having altered mental status, prevented any contact or even conversation between Gerald Rich and Patricia Sheppard and allowed the Defendants to intentionally inflict and/or negligently inflict emotional distress on Gerald Rich.

*Id.* at 1–2. Finally, Rich notes that Patricia was on medication throughout the relevant events causing an "altered mental status." *Id.* at 5.

The problem with all this is that Rich never tries to explain how the new experts and discovery will address the specific arguments Defendants make. Starting with the NIED claims, all three Defendants says they owed Rich no legal duty. *See* Thomas Mem. [72] at 17; Sheppard Mem. [74] at 7–8. Rich has not explained how the discovery he seeks would enable him to respond to that legal argument.

As for the IIED claims, Thomas says the claim against him fails because all three defendants testified that Thomas made no effort to influence Patricia. Thomas Mem. [72] at 15–

16. Rich has not explained why medical testimony is necessary to rebut that argument or why Patricia's mental state would matter if Thomas did nothing to influence her. Similarly, the Sheppard Defendants say Rich has no evidence that they "acted in a way that would evoke outrage or revulsion in a civilized society." Sheppard Mem. [74] at 7.

Lastly, the Sheppard Defendants seek summary judgment on their conversion counterclaim, arguing that Rich has already admitted the essential elements: proof "of a wrongful possession, or the exercise of a dominion in exclusion, or defiance of the owner's right, or, if an unauthorized and injurious use, or of a wrongful detention after demand." *Comm. Bank, Ellisville v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004) (internal citations omitted). Again, Rich makes no effort to explain how the discovery he seeks would allow him to respond to this specific claim.

The "importance" factor weighs against Rich's motions for two additional reasons. First, some of his most significant assertions relate to an incident at hospice care shortly before Patricia passed. Victoria and Bud apparently told hospice workers—and Thomas—that Patricia did not want to see Rich. *See* Thomas Dep. [71-2] at 23; Victoria Sheppard Dep. [71-3] at 12–13, 25–26. Thomas then conveyed that message to Rich, as did the police. *See* Thomas Dep. [71-2] at 23; Victoria Sheppard Dep. [71-3] at 26. But the question for now is whether Rich needs medical evidence to avoid summary judgment, and as to this incident, the parties seem to agree Patricia was no longer competent once in hospice care. *See, e.g.*, Thomas Dep. [71-2] 22–24 ("By that point, Pat did not have mental capacity.").[2]

---

[2] The events at the hospice played a large part in Rich avoiding dismissal under Rule 12(c). *See* Feb. 28, 2017 Order [31] at 8–12.

Second, it is not apparent that the record will be completely lacking regarding Patricia's mental state. Even if the evidence remains thin after Rich's counsel fully reviews what Poole provided and obtains the medical records he recently subpoenaed, other evidence exists. For example, Rich himself testified at length regarding Patricia's condition during his deposition. If her condition is truly relevant to Defendants' motions, Rich could presumably offer lay-opinion testimony, based on personal knowledge, regarding her behavior and the medications she was taking. This further diminishes the import of the evidence he wishes to develop.

In sum, Rich does little more than say he needs discovery and new experts. He does not address Defendants' more specific legal augments. *See Leza*, 496 F. App'x at 377 (affirming denial of additional discovery because new counsel "made no effort to explain how the deposition testimony sought [would] have any bearing on the issues raised in the Defendant's summary judgment motion"). This factor weighs against amending the scheduling order.

C. The Potential Prejudice in Allowing the Amendment

Rich essentially seeks a do-over ten months after first designating experts, five months after the discovery deadline, and five months after Defendants moved for summary judgment. Granting his motions at this late date would necessitate new expert deadlines *for both sides*; discovery, including depositions of "treating medical physicians, medical care providers, and other individuals," Pl.'s Reply [91] at 3; updated summary-judgment motions followed by responses and replies; and, of course, a considerable delay in the trial which should have occurred this month.

Defendants have shown prejudice. *See Grant v. City of Hous.*, 625 F. App'x 670, 679–80 (5th Cir. 2015) (finding that amendment would prejudice defendants because "the district court would have needed to consider another round of dispositive motions on [plaintiff's] newly-added

8

claims" causing "additional expenses") (citing *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 239 (5th Cir. 2015) (affirming refusal to allow amendment to scheduling order and new claims because "not only would the district court have needed to reopen discovery, but it also would have needed to allow another round of dispositive motions")).

      D.      The Availability of a Continuance

Granting a continuance would allow time for these additional steps to occur, but it would come at a cost. In *Garza v. Allstate Texas Lloyd's Co.*, the Fifth Circuit affirmed the trial court's decision to exclude testimony from a delinquently disclosed expert and noted as to this fourth factor:

> Although a continuance might have cured any prejudice, such a remedy would have delayed resolution of the case and added to [defendant's] expenses. Further, a continuance would not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders. Moreover, because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance.
>
> . . . .
>
> [Finally, w]e have recognized that adherence to such scheduling orders is critical in maintaining the integrity of judicial proceedings. Failures to meet discovery deadlines increase the cost of litigation, to the detriment of the parties enmeshed in it; they are one factor causing disrespect for lawyers and the judicial process; and they fuel the increasing resort to means of non-judicial dispute resolution.

284 F. App'x 110, 113 (5th Cir. 2008) (citation and quotation marks omitted). The same is true here. Rich has not demonstrated good cause for amending the scheduling order.

The only remaining issue is whether Rich should receive a further extension of time to respond to the pending motions. As noted, the motions were filed mid-October 2017, and Rich has already received two extensions. Admittedly, much of the delay relates to Poole's withdrawal, which is beyond Rich's control. But Rich's new attorney has now been on the case since at least February 16, 2018, and says he is too busy to file a response within the normal 14-

day period.  That argument is not persuasive.  He also says, however, that his doctor recommended knee surgery in "the next six to eight weeks."  Pl.'s Mot. [85] at 3.  While the Court is not unsympathetic to counsel's medical needs, counsel has been filing motions and issuing subpoenas, and it is not clear that surgery has actually been scheduled.  Regardless, the motions are almost five months past the original due date, and the original pretrial and trial dates have now passed.  The Court needs to get the case back on track.  Accordingly, Plaintiff will be given 40 days to respond to Defendants' motions.

IV. Conclusion

The Court has considered all the parties' arguments.  Those not specifically addressed do not change the outcome.  For the foregoing reasons, Rich's Motion for an Extension of Time [81] and Motion to Re-Open Discovery [85] are denied in part and granted in part.  The Court grants Rich an extension of 40 days from the entry of this Order to respond to Defendants' pending Motions for Summary Judgment [71, 73].  Rich's motions are otherwise denied.

**SO ORDERED AND ADJUDGED** this the 9th day of April, 2018.

s/ *Daniel P. Jordan III*  
CHIEF UNITED STATES DISTRICT JUDGE