UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

GERALD M. RICH                                                            PLAINTIFF

V.                                                    CIVIL ACTION NO. 3:16-CV-366-DPJ-LRA

ALEXANDRIA VICTORIA SHEPPARD,
JAMES PATRICK SHEPPARD,
AND PHILIP THOMAS                                                         DEFENDANTS

ORDER

This diversity case is before the Court on three dispositive motions and a host of peripheral disputes. Defendant Philip Thomas seeks summary judgment on the claims against him [71], as do Alexandria Victoria Sheppard ("Victoria") and James Patrick Sheppard ("Bud") (the "Sheppards") [73]. Plaintiff Gerald Rich seeks dismissal, or alternatively, summary judgment on the Sheppards' counterclaims [108]. The parties also assert nine other motions related to those dispositive motions [111, 113, 114, 115, 120, 121, 127, 145, 149]. For the reasons that follow, the Court grants Thomas's Motion for Summary Judgment [71]; denies the Sheppards' Motion for Summary Judgment [73]; strikes Rich's Motion to Dismiss/Motion for Summary Judgment [108] without prejudice; and grants some of the remaining motions as more fully discussed herein.

I.      Background

This is a sad story about the final months of Patricia Sheppard's ("Patricia") life. She died in May 2014, leaving two children—the Sheppards. She also left Plaintiff Rich, who describes himself as her "life partner" but not her husband. In very basic terms, the Sheppards and Rich face each other in two civil actions that dispute Patricia's intentions as to her estate and her affections. The first is a will contest in chancery court. The second is this case in which

Rich says the Sheppards, along with Patricia's attorney Phillip Thomas, influenced Patricia to shut Rich out of her life and remove him from her will. The Sheppards accuse Rich of fraud and conversion, which they assert as counterclaims.

On February 28, 2017, this Court narrowed the issues, dismissing some claims under Federal Rule of Civil Procedure Rule 12(b)(6) while allowing Rich to proceed on claims for intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED"). *See* Feb. 28, 2017 Order [31] at 16–17. Now Thomas and the Sheppards seek summary judgment on those claims, and Rich seeks dismissal of the counterclaims.

II.     Analysis

This Order first examines the peripheral motions before turning to the three dispositive motions.

A.      Plaintiff's Motion to Dismiss/Summary Judgment/Supplemental Response [108] and Defendants' Motion to Strike [120, 123]

On June 1, 2018, Rich filed a document he called: "Plaintiff's Motion to Dismiss the Counterclaims or, in the Alternative, Motions for Summary Judgment on the Counterclaims; Memorandum in Support Thereof; and Supplemental Responses to Defendants' Motions for Summary Judgment" (hereinafter "Motion/Supplemental Response"). He docketed this omnibus submission three times [108, 109, 110], triggering a motion to strike by Thomas [120], to which the Sheppards filed a joinder [123].

There are numerous substantive and procedural problems with Rich's Motion/Supplemental Response. So for the reasons that follow, the Court will grant Defendants' motion to strike, in part. The Court will not strike Rich's Motion/Supplemental Response to the extent it relates to subject-matter jurisdiction, but that portion of the submission is denied on the

merits. Finally, the order striking his pleading will be without prejudice as to his arguments regarding the Sheppards' counterclaims.

           1.        Uniform Local Rule 7(b)

As an initial matter, Rich's Motion/Supplemental Response violates at least six local rules. First, he combined his motion and "memorandum" in the same pleading. Technically speaking, the submission reads more like a motion in that it generally lists Rich's issues without providing the typical legal analysis. Still, there are a few legal citations, so to the extent Rich filed a combined motion and memorandum, he violated Uniform Local Rule 7(b). *See* L.U. Civ. R. 7(b)(2) ("The memorandum brief must be filed as a separate docket item from the motion or response and the exhibits"); *id.* R. 7(b)(2)(B) ("[A] motion may not exceed four pages."); *id.* R. 7(b)(4) ("[C]ounsel for movant must file a memorandum brief in support of the motion.").

Second, Rich included with his motion a combined supplemental response to the summary-judgment motions separately filed by Thomas and the Sheppards. That violated three more subparts of Uniform Local Rule 7(b). *See* L.U. Civ. R. 7(b)(3)(B) ("A separate response must be filed as to each separately docketed motion."); *id.* R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document. Any motion must be an item docketed separately from a response."); *id.* R. 7(b)(3)(D) ("A response to a motion may not be included in the body of a pleading, but rather should be a separately docketed item denominated in the record as a response and should be associated by docket number with the motion to which it responds.").

The Court is not attempting to pick nits and typically would not deny a motion for these technical issues alone. But rules exist for a purpose, and in this case, they help the Court differentiate the issues. By combining everything in one document and failing to provide an

actual memorandum of law as to each motion he addressed, Rich made it considerably more difficult to follow his arguments and match them to the correct parties and motions. As discussed below, the motion to strike will be granted (in part) for other reasons, and if Rich reasserts any of these issues again, he will be expected to follow the rules.

### 2. Timing

Because Rich combined his motion, memorandum, and supplemental responses, different rules and procedural histories apply. To the extent he is filing a dispositive motion regarding the Sheppards' counterclaims, the extended deadline to do so was October 27, 2017. *See* Oct. 2, 2017 Text Order. Rich never sought leave to file his motion out of time, making it approximately seven months past due. To the extent his submission attempts to supplement his response to the two pending summary-judgment motions, the deadline for his summary-judgment responses was May 21, 2018. *See* Apr. 9, 2018 Order [100]. While Rich met that deadline with his first responses [101, 103], he filed a supplement on May 24 (that was not disputed) [107] and then the disputed Motion/Supplemental Response on June 1. In neither instance did he seek leave to file his supplements out of time.

The Federal Rules of Civil Procedure contemplate missed deadlines. As a general matter, Rule 6(b)(1)(B) states that when, as in this case, "an act may or must be done within a specified time, the court may, for good cause, extend the time . . . *on motion made after the time has expired* if the party failed to act because of excusable neglect." (Emphasis added.) Relevant factors for excusable neglect include "the danger of prejudice to the non-movant, the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 n.8 (5th Cir. 2006)

(citation and quotation marks omitted); *see also Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (addressing factors for extending scheduling order deadlines—like the dispositive-motions deadline here—under Rule 16(b)(4)). Finally, "[e]ven if good cause and excusable neglect are shown, it nonetheless remains a question of the [district] court's discretion whether to grant any motion to extend time under Rule 6(b)." *McCarty v. Thaler*, 376 F. App'x 442, 443–44 (5th Cir. 2010).

In this case, Rich never filed the required motion seeking an extension of time to file his Motion/Supplemental Response, and his responses to Defendants' motions to strike do not fully address the relevant factors. *See* Defs.' Mem. [125]; Pl.'s Resp. [132]. Rich does address the cause factor in his responses, mentioning the earlier delays in the case, but he does not explain why he could not fully respond to the summary-judgment motions on time or file his dispositive motion earlier.

It should be noted that Rich made the same type arguments when previously seeking more time to respond to Defendants' summary-judgment motions. The Court rejected those arguments and further found that the other good-faith factors did not warrant another extension. *See* Apr. 9, 2018 Order [100] at 4. Nevertheless, the Court gave Rich 40 additional days to respond. *Id.* at 10. Here, Rich never made a motion, but assuming he had, he would need to show excusable neglect because he missed the deadline. *See* Fed. R. Civ. P. 6(b)(1)(B). And given the Court's prior analysis of Rich's earlier request for an extension, plus the 40 extra days that were given, Rich should have filed a motion offering something more than the conclusory arguments in the present record regarding cause. Plus, the other relevant factors are largely unexplored.

Rich does, however, make the legal argument that he was not required to seek leave. According to him, "Rule 56(e) provides the Plaintiff with an opportunity to supplement their [sic] responses," Pl.'s Resp. [132] ¶ 7, and "Rule 56 does not require the party supplementing their responses to seek leave of Court," *id.* ¶ 13. Rich is mistaken. Rule 56(e) expressly states that the "*court* may" grant relief when a party fails to support factual assertions. (Emphasis added.) It does not allow a party to supplement after an expired deadline without complying with Rule 6(b).

Moreover, the very problem Rule 56(e) is designed to address is apparent throughout the Motion/Supplemental Response. Rule 56(e) exists to remedy a party's failure to support factual assertions in the way Rule 56(c) requires. And the Motion/Supplemental Response fails in that regard—it is replete with assertions for which Rich offers no citation to the record. So what Rich really needs is a Rule 56(e) order allowing him to file yet another supplement to fix the problems in his unauthorized Motion/Supplemental Response. That would only compound the delay.

The Court recognizes that Rich's new attorney first appeared February 16, 2018, and the Court would anticipate some catching up. It was primarily for that reason that an additional 40 days were provided. But the Court has a responsibility to keep cases moving. *See Leza v. City of Laredo*, 496 F. App'x 375, 376–77 (5th Cir. 2012) (noting that "district court judges have power to control their dockets by refusing to give ineffective litigants a second chance to develop their case") (internal quotation marks and citation omitted). The instant case is way off track. Moreover, the failure to first seek leave to file this delinquent Motion/Supplemental Response merely adds weight to the other reasons it should be stricken.

### 3.     Jurisdiction

One aspect of the Motion/Supplemental Response is not untimely—Rich says the Court lacks jurisdiction.  Objections to subject-matter jurisdiction "may be raised at any time." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).[1]

According to Rich, the parties are not diverse.  *See* Pl.'s Mot. [108] ¶¶ 12, 13.  As he correctly notes, the Sheppards' original Answer [8] averred that Bud is "a permanent resident citizen of Louisiana."  Defs.' Joint Answer [8] ¶ 3.  If so, then he and Rich reside in the same state.  But the Court spotted this issue when the Sheppards answered the Complaint.  It therefore entered a *sua sponte* order directing them to show cause why the case should not be remanded. *See* Jan. 30, 2017 Order [26].  Defendants responded on February 9, 2017, and on that same day moved to amend their Answer to state that Bud was a Mississippi resident at the time suit was filed and at the time of Defendants' removal.  *See* Defs.' Resp. [27]; Mot. to Amend [28].  Rich did not oppose the motion, *see* Pl.'s Resp. [30], and the Court granted it, *see* Feb. 28, 2017 Order [31].

Despite this history, Rich now argues that "Defendant, James Patrick ["Bud"] Sheppard, never proved he was a Mississippi resident at the time the Complaint was filed."  Pl.'s Mot. [108] ¶ 13.  Rich is again mistaken.  In support of their motion to amend, the Sheppards attached Bud's unrebutted affidavit factually establishing diversity jurisdiction.  *See* Sheppard Aff. [27-1].

---

[1] Here again, the motion is procedurally deficient.  Rich's jurisdictional arguments are dispositive in nature and represent yet another motion imbedded in his omnibus Motion/ Supplemental Response.  They are not, therefore, properly asserted.  *See* L.U. Civ. R. 7(b)(3)(C) ("A response to a motion may not include a counter-motion in the same document.  Any motion must be an item docketed separately from a response.").  Nevertheless, the Court has an independent duty to ensure that subject-matter jurisdiction exists.  And it must make that determination before ruling on Defendants' summary-judgment motions.  Accordingly, the Court will address it now.

Based on that record, the Court concluded that subject-matter jurisdiction existed. *See* Feb. 28, 2017 Order [31]. Rich has not shown otherwise.

Rich also says remand is appropriate for the additional reason that "Thomas, a Mississippi resident, without any authority, removed the case to Federal Court." Pl.'s Mot. [108] ¶ 13. Rich apparently relies on 28 U.S.C. § 1441(b)(2), which states: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." But "removal in violation of § 1441(b) [is] a defect in removal procedure," which can be waived if "the plaintiff[] fail[s] to move for remand within the requisite 30-day period." *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 393 (5th Cir. 2009); *accord Menendez v. Wal-Mart Stores, Inc.*, 364 F. App'x 62, 64 (5th Cir. 2010). Rich missed that deadline. Jurisdiction is proper.

4.    Substance of Rich's Motion/Supplemental Response

a.    Supplemental Responses to Summary-Judgment Motions

To the extent the Motion/Supplemental Response supplements Rich's summary-judgment responses, Rich was required to comply with Rule 56(c). That rule states in relevant part:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to *particular parts of materials in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . .

Fed. R. Civ. P. 56(c)(1) (emphasis added).

Yet the Motion/Supplemental Response offers few record citations in its 21 additional pages of assertions. As just one of many examples, Rich writes that the Sheppards "chose to

once again, at the suggestion of and direction from Philip Thomas, (Gerald Rich's attorney),

instructed [sic] someone to write a holographic Will in the State of Minnesota." Pl.'s Mot. [108]

¶ 7. He offers no record citation to support the assertion, much less a cite to the particular parts

of the record as Rule 56(c)(1)(A) requires.

In fairness, Rich does cite various documents—many of which he has also moved to

strike as constituting hearsay or lacking authentication. But those documents do not

substantively alter his original responses to the summary-judgment motions. The only testimony

he cites is one passage from his deposition and one from Bud's. But neither passage affects the

Court's analysis. Beyond that, the supplemental response fails to comply with Rule 56(c)(1)(A).

And as a result, the Court may simply ignore the assertions. *See* Fed. R. Civ. P. 56(c)(3).

Similarly, Rich's Motion/Supplemental Response is replete with speculation and

conclusory allegations. For example, he states that Thomas was "his (Rich's) attorney" with

respect to Patricia's estate. Pl.'s Mem. [108] ¶ 6. He offers neither record citation nor legal

authority for that contention. The non-movant must offer more than conclusory allegations to

avoid summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc).

Rich's Motion/Supplemental Response fails on another front as well—it addresses claims

that were dismissed or were never made. For example, he continues to dispute Thomas's

conduct with respect to Patricia's estate. This Court has already dismissed those claims under

Federal Rule of Civil Procedure 12(b)(6), and there has not been a proper motion to alter or

amend. *See* Feb. 28, 2017 Order [31].

Other claims appear to be new, like the civil-conspiracy allegations Rich makes against

Thomas and the Sheppards. *See* Pl.'s Mot. [108] ¶¶ 6, 29. There are two approaches for

addressing new claims raised in response to a dispositive motion—ignore the new theory or treat it as a motion to amend. *Compare Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."), *with Debowale v. US Inc.*, No. 95-20031, 1995 WL 450199, at *1 (5th Cir. July 3, 1995) (per curiam) ("The district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it."). This case is too old, and the deadline to amend is too far gone, to construe a delinquent supplemental response as a never-made motion to amend. For all these reasons, the Court concludes that the supplemental responses contained in the Motion/Supplemental Response are legally insufficient. *See* Fed. R. Civ. P. 12(f).

b.      Rich's Motion to Dismiss, or Alternatively for Summary Judgment

To the extent Rich seeks dismissal of the Sheppards' counterclaims, the same procedural issues remain—and then some. But the Court is somewhat concerned that Rich may have a point regarding standing, joinder, and the potential propriety of staying the remaining claims pending the chancery-court proceedings regarding Patricia's estate.

Unfortunately, neither side has provided adequate legal analysis of these issues. For example, to determine the real party in interest, the Court must look to state substantive law governing the claim. *See In Re M/V Elaine Jones*, 480 F.2d 11, 25 (5th Cir. 1973), *overruled on other grounds by Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir. 1975). In this case, that would include Mississippi probate law and Mississippi's law regarding the rights of beneficiaries before the testator passes. Other than citing Federal Rule of Civil Procedure 17 and some Mississippi cases addressing claim splitting, Rich never offers legal authority or substantive

analysis of these issues. "It is not the function of this Court to research legal issues for parties." *Adams v. Weeks Marine, Inc.*, 885 F. Supp. 992, 995 (S.D. Tex. 1995).[2]

On this *additional* basis, the Court strikes the untimely Motion/Supplemental Response to the extent it contains a motion to dismiss the counterclaims. But it does so without prejudice to Rich's right to file a properly supported motion seeking additional time to file. That motion must attach a properly analyzed and supported motion to dismiss or, alternatively, for summary judgment of the counterclaims. His memorandum should also address whether standing is an issue that can be waived if not timely asserted.

B.    Motions to Strike Evidence and Related Motions [111, 113, 114, 115, 121, 127, 145, 149]

The parties have filed six motions to strike evidence and two related motions. The Court will begin its analysis with Rich's motions.

1.    Plaintiff's Motions to Strike [121, 127]

Rich has filed two motions to strike in which he says that significant portions of Defendants' summary-judgment record should be stricken as inadmissible. The motions are untimely and incorrect with respect to the evidence upon which the Court will base its Rule 56 rulings. They are therefore denied.[3]

To begin, Defendants say Rich's motions were untimely. Rich filed his two summary-judgment responses on May 21, 2018. Neither his summary-judgment responses nor his

_____

[2] The claim splitting argument is not compelling for a variety of reasons, including the fact that the Sheppards brought their claims as viable counterclaims to the suit Rich himself initiated.

[3] Some of the statements to which Rich objects would be considered hearsay depending on the purpose for which they were offered, but the Court will not consider those statements for any inadmissible purposes, rendering those portions of the motion moot.

supporting memoranda suggested that Defendants' record evidence should be stricken. It was only after the briefing closed that Rich first moved to strike.

The process for objecting to a party's record evidence is contained in Rule 56. As stated in Rule 56(c)(2): "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Because the mechanism for objecting is found in Rule 56(c)'s "procedures," such objections should occur before that process closes—in other words, before the final briefing. Indeed, the comments to the rule state that "[t]he objection functions much as an objection at trial, adjusted for the pretrial setting." Fed. R. Civ. P. 56 Advisory Committee's notes to 2010 amendment. And at trial, the objection must be contemporaneous. While Rich was not required to make a motion to strike, *id.*, he was minimally required to raise this issue before the briefing closed. The motion is not timely.

In addition to the timeliness of Rich's Motion to Strike, the evidence this Court will consider can be offered in admissible forms.

### a.    Thomas's Evidence

Thomas's evidence upon which the Court has based its substantive rulings is admissible for two primary reasons: (1) it is established by Rich's own admissions or statements and (2) it falls within recognized exceptions to hearsay.

First, the following issues raised in Rich's motion to strike are established by Rich's evidence or by his own statements: (1) Rich opened Patricia's mail from Charles Schwab while she was at the Mayo Clinic and discovered that she had removed him as the beneficiary to her accounts while adding the Sheppards; (2) Rich spoke with Patricia on April 10, 2014, to ask why she removed him from the accounts; (3) Patricia did not give Rich express permission to reinsert himself as a beneficiary, yet he accessed the Schwab accounts online and named himself as 98%

beneficiary; (4) Rich wrote checks to himself from Patricia's bank accounts; and (5) according to Victoria's testimony, Rich said he cut the checks because he was "mad."  *See* Rich Dep. [71-5] at 16–18, 28; V. Sheppard Dep. [71-3] at 17; *see also* Fed. R. Evid. 801(d)(2).  This evidence is admissible.

Second, Thomas's testimony about statements Patricia made to him is not hearsay for several reasons, starting with Federal Rule of Evidence 803(3).  Rule 803(3) excludes from the rule against hearsay "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)."  And here, many of the disputed statements reflect Patricia's contemporaneous feelings regarding Rich; her plans to sever contact with Rich and remove him from her will; and her desire to revoke his power of attorney.  They are not hearsay when offered to show her state of mind.

Similarly, Thomas offers the statements to show their effect on him and his knowledge of Patricia's feelings and plans.  According to the Fifth Circuit, statements are not offered for their truth if offered "to show the effect on the listener."  *White v. Fox*, 470 F. App'x. 214, 222 (5th Cir. 2012).  So too, the statement is not hearsay if "introduced to show a speaker and/or listener's knowledge, notice, or state of mind."  *I.F. v. Lewisville Indep. Sch. Dist.*, No. 4:14-cv-359, 2016 WL 7734555, at *7 (E.D. Tex. Dec. 1, 2016) (citing *United States v. Obregon-Reyes*, 507 F. App'x. 413, 424 (5th Cir. 2013) (citing 2 McCormick on Evidence § 249 (6th ed. 2006) ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as . . . having knowledge."))).

Rich also contests all evidence regarding the holographic will that cut him out of Patricia's estate.  That information can be offered in an admissible form for at least three reasons.

First, Thomas testified that Patricia asked him how to change the will while she was at the Mayo Clinic so he gave her advice on holographic wills (i.e., wills written in the testator's own hand). *See* Thomas Aff. [71-1] at 2. As noted above, such statements are admissible under Rule 803(3). Second, Thomas received the will as an attachment to a text from Patricia's number after discussing with her what she would need to include. *Id.* This satisfies Federal Rule of Evidence 901(a). Third, the document is what it purports to be, i.e., the document Thomas received. *See United States v. Carriles*, No. EP-07-cr-0087-KC, 2010 WL 4918770, at *6 (W.D. Tex. Nov. 19, 2010) (citing *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993)). Rich's remaining arguments as to the holographic will—like whether someone else wrote parts of it—go to weight and not admissibility.

Finally, testimony from Victoria and Bud that Patricia made her own decision to sever ties with Rich and was not influenced by Thomas are not hearsay. This testimony was based on the witnesses' first-hand observations and does not include any out-of-court statements being offered for their truth. To the extent it could be viewed as hearsay, Rule 803(3) applies.

### b. Sheppards' Evidence

Turning to Rich's motion to strike the Sheppards' supporting evidence, much of Rich's motion relates to his own testimony. Without citing the specific testimony to which he objects, Rich says that the following pages of his deposition should be stricken because they are irrelevant, speculative, and, in a few instances, constitute hearsay: 10, 11, 12, 42, 43, 44, 49, 53, 193, 224, 315, 316, 377, 378, 379, and 560. Pl.'s Mot. [127]. The Sheppards simply say the motion is untimely and does not "bear on the pending summary judgment motions." Defs.' Joinder [135] at 2. But without knowing the specific passages Rich finds objectionable, the Court cannot intelligently rule. As to the passages he does specifically reference, the objections

do not seem compelling, but the Sheppards apparently find the disputed passages immaterial. Accordingly, those issues appear moot, even assuming Rich had timely asserted them.

In sum, Plaintiff's Motions to Strike [121, 127] are untimely and otherwise lack merit as to the evidence the Court has considered in its substantive rulings. They are therefore denied to that extent. Finally, because Plaintiff's motion to strike as to Thomas has been denied, Thomas's Motion to File Sur-Rebuttal [145] is considered moot as is Rich's Motion for an Extension of Time [149] related to that motion.

2. Defendants' Motions to Strike Rich's Evidence [111, 113, 114, 115]

Defendants' Motions to Strike say that the affidavits Rich offers from himself, Kimberly Cross, Dr. David Buras, and Dr. Christopher William Lartigue should be stricken because they are based on hearsay and are otherwise inadmissible.

Other than Rich, the witnesses generally recount what Rich told them about his interactions with Patricia, the Sheppards, and Thomas. They then link Rich's accounts to his alleged emotional distress. The personal observations from these witnesses regarding Rich's well-being satisfy Federal Rule of Evidence 602 and Federal Rule of Civil Procedure 56(c). In other words, they can certainly say that they witnessed Rich exhibiting distress.

But Rich sometimes relies on these witnesses in his various memoranda to establish the truth of his statements to them about things that were happening in Mississippi. *See, e.g.*, Pl.'s Mem. [102] at 10–11 (citing Lartigue Aff. [101-4] at 4 (asserting Lartigue "learned that Thomas betrayed Rich's trust and confidence, and made continuous attempts to 'cut him out of every aspect' of Patricia's life, and 'ignored [Rich's] attempts to resolve any misunderstandings so that he could be with [Patricia the last six weeks of her life'")). There is no indication these witness had personal knowledge of the conversations and actions they described. Accordingly, the

testimony violates Federal Rules of Evidence 602 and 802.  The Court will disregard the inadmissible aspects of the affidavits.

That said, the Court will not strike the affidavits because their presence in the record creates no prejudice. *See Conn v. United States*, No. 3:10-CV-300-CWR, 2011 WL 2117969, at *5 (S.D. Miss. May 27, 2011) (stating motions to strike "generally should not be granted absent a showing of prejudice to the moving party"); *accord Davis v. Hinds Cty., Miss.*, No. 3:16-CV-674-DPJ-FKB, 2017 WL 2269010, at *2 (S.D. Miss. May 23, 2017); *see also* 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.) (noting general agreement that Rule 12(f) motions should be denied absent showing that defense "may cause some form of significant prejudice").  The motions regarding Cross, Buros, and Lartigue [113, 114, and 115] are granted to the extent the Court will not consider the inadmissible evidence but are otherwise denied.

As to Rich's affidavit, Defendants say that it is largely irrelevant.  That may be true, but the Court has not relied on the irrelevant information and sees no basis to strike.  The motion [111] is therefore denied to the extent it seeks an order striking Rich's affidavit.

C.     Summary Judgment Motions

1.     Standards

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when the evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

2.     Thomas's Summary-Judgment Motion

Thomas presents three grounds for summary judgment on Rich's claims: first, Rich failed to show that Thomas's conduct was outrageous; second, there is no evidence that Thomas caused Rich to suffer any harm; and third, as to NIED, Rich has failed to show that Thomas owed Rich any duty of care. *See* Def.'s Mem. [72]. Although the Court agrees that Thomas's conduct regarding the surviving IIED claim is not sufficiently outrageous, this Order focuses on his dispositive causation argument.

To establish either IIED or NIED, a plaintiff must show that the defendant caused his injuries. *See Ghane v. Mid-S. Inst. of Self Def. Shooting, Inc.*, 137 So. 3d 212, 226 n.23 (Miss. 2014). As to IIED claims, the plaintiff must show he "suffered severe emotional distress *as a*

*direct result of the acts of the defendant.*"  *Jones v. City of Hattiesburg*, 228 So. 3d 816, 819

(Miss. Ct. App. 2017) (emphasis added), *cert. denied*, 229 So. 3d 118 (Miss. 2017).  Similarly,

an NIED claim requires proximate cause.  *See Strickland v. Rossini*, 589 So. 2d 1268, 1275

(Miss. 1991).

      Here, Rich fails to raise any material dispute as to whether Thomas caused Rich to suffer

emotional harm.  In his response, Rich mentions a number of alleged facts—not all of which are

supported with proper record evidence—that he believes establish causation.  Those "facts"

generally address three issues:  (1) whether Thomas protected Rich's interests when representing

Patricia in her legal affairs; (2) whether Thomas took steps to otherwise influence Patricia to shut

Rich out; and (3) whether Thomas blocked Rich's efforts to see Patricia in her final hours at a

hospice facility.[4]

      Starting with Thomas's legal work, the Court has already ruled that Thomas's duties

flowed to his client—Patricia.  Feb. 28, 2017 Order [31] at 6–7.  So while Rich may believe

Thomas should have protected Rich's interests in Patricia's assets, he has not shown that was

Thomas's responsibility.  "If an attorney concludes that a potential beneficiary, or someone

exercising the power of attorney, is attempting to take advantage, the attorney must be free to

offer that advice without fear that the third-party will later sue for emotional distress."  *Id.* at 7.

As a result, "claims related to alleged undue influence in Patricia's estate planning fail as a

---

[4] Rich also says the motion should be denied because Thomas failed to adequately brief the causation issue.  *See* Pl.'s Mem. [102] at 11.  But Thomas's causation argument is factual, and he clearly put Rich on notice of it.  *See* Def.'s Mem. [72] at 9 ("As demonstrated above, there is simply no evidence that Philip caused Patricia 'to shut Rich out of her life' as is alleged in this lawsuit.");  *see also id.* at 14 (asserting "no statement by Philip was a proximate cause of Rich not being allowed access into the hospice facility").

matter of law and [were] dismissed with prejudice." *Id.* Rich never sought reconsideration of this ruling, and the Court remains convinced that it is sound.

As for whether Thomas took steps to shut Rich out of Patricia's life before the incident at the hospice, Rich has not created a fact question. Some additional facts put this issue into context. As noted above, Rich and Patricia had no further contact after he called her on April 10, 2015, to ask why she removed him as beneficiary to her Schwab accounts. *See* Rich Dep. [71-5] at 28. That call ended abruptly on Patricia's end, and Victoria described her mother as being upset by Rich's inquiries. *See* V. Sheppard Dep. [71-3] at 16. The relationship was effectively severed at that point.

On April 11—the day after Rich's final conversation with Patricia—Patricia called Thomas from Minnesota and advised that Rich had stolen her money and she wished to press charges. Thomas Aff. [71-1] ¶ 8. It does not appear that Patricia knew at this point that Rich had re-inserted himself as the Schwab beneficiary. But she was upset by his inquiries into her decisions regarding the Schwab account and also contended that Rich had written checks to himself from her bank accounts. *See* V. Sheppard Dep. [71-3] at 16; Thomas Aff. [71-1] ¶ 9 (noting that Patricia sent copies of checks to Thomas on April 12). Patricia also told Thomas during that April 11 call that she wanted to remove Rich from the will and asked Thomas how to make that happen. Thomas Aff. [71-1] ¶ 8. After the conversation, Thomas received a holographic will via a text from Patricia. *Id.* The Will stated, "I intentionally exclude Gerald M. Rich from any inheritance or anything else!" Will [110-9] at 1. And the next day, Patricia stripped Rich of his durable power of attorney. Apr. 13, 2015 POA [101-2] at 84. Finally,

Thomas states that Patricia indicated that she wanted him to have no further communications with Rich.  Thomas Aff. [71-1]  ¶ 11.

As noted, Thomas's legal advice is beyond the scope of the remaining claims.  So the salient causation question from all this is whether Thomas did anything to influence Patricia to shut Rich out of her life and thereby cause Rich's alleged emotional distress.  According to Thomas, he was just following his client's wishes and made no such efforts.  Thomas Dep. [71-2] at 28.   Both Victoria and Bud back his testimony.  *See* V. Sheppard Dep. [71-3] at 22, 24 (denying that she "ever witness[ed] Philip Thomas attempting to coerce [her] mom to shut Gerald Rich out of her life" and stating that Patricia "made the decision . . . to have no further contact"); B. Sheppard Dep. [71-4] at 5 (denying that "Thomas coerc[ed] [his] mom into shutting Gerald Rich out of her life" and noting that Patricia made the decision "to no longer have contact" with him).

Rich's primary evidence to the contrary is a recorded conversation that occurred a week before Patricia went to the hospice facility.  That recording included the following:

Bud:  I mean, do you anticipate Gerald even like coming . . . like trying to get back in the picture at all?

Thomas:  He tries. . .

Brad [Victoria's Husband]:  He tries every day.

Thomas:  He tries every single day.

Bud:  Well, beyond email though.

. . . .

Bud:  The conscience email was Mother's Day. I was like, "appropriate."

Victoria:  That was yesterday.  That was yesterday -

Bud:  I was like -

Thomas:  Very [in]appropriate.[5]

Bud:  Like let's be conscience on . . . on Mother's day, like [chuckling]

Thomas:  He, it was just like, so fitting for Gerald. [chuckling] . . . .  Send it at the most inappropriate time.

. . . .

Brad:  I just want one email that says, "I hope Pat is doing well."

Thomas:  Exactly!  How about one, that just says, "I don't care about any of the other stuff, just tell me how Pat's doing.  I'm just . . . ," you know?  Just one, it's just not all about him!

. . . .

Bud:  But see, he told me here; he said that he talked, he talks about how she is doing and how they talked about that for a little bit.  And then, he said, "you know, I hate to bring this up, but I was just you know, going through some of the stuff here on the desk and I noticed I wasn't the primary . . . you had changed me off of being the beneficiary on your Schwab accounts."

. . . .

Thomas:  Yeah, if he ever finds out that *I am the one that recommended that* and I'm going number one on the hit list.

. . . .

Bud:  Oh, you . . . when did you do that?

Thomas:  Immediately.

May 11, 2015 Tr. 1 [107-7] at 4–9 (emphasis added).

Although the conversation addressed Rich's efforts to regain access to Patricia, it does not establish that Thomas caused Rich to be cut off.  First, the conversation occurred almost a month *after* Patricia called Thomas saying Rich stole her money; sent Thomas the holographic

---

[5] The transcript reflects a handwritten notation depicting the insertion of "in" before the transcribed word "appropriate."  May 11, 2015 Tr. 1 [107-7] at 5.

will severing ties; and instructed Thomas to have no contact with Rich. The conversation says nothing to contradict the testimony from the Sheppards and Thomas that Patricia had previously decided to sever ties and Thomas did nothing to influence that decision. Finally, other portions of the conversation that included Patricia indicate that Thomas openly discussed Rich's efforts to get back in Patricia's good graces after April 10, so it does not appear that Thomas attempted to hide any of that from her.

The recording does, however, show Thomas recommended that Patricia remove Rich as the beneficiary on the Schwab accounts at some point before April 10. But again, the Court has previously held that Thomas—as Patricia's attorney—was well within his rights to advise her in this way. *See* Feb. 28, 2017 Order [31] at 7. Other than the legal advice it mentions, the recorded conversation fails to show that Thomas's actions caused Patricia to sever ties with Rich after the April 10 call between them.[6]

In sum, the Court finds that Rich has failed to show a genuine dispute of material fact as to his IIED and NIED claims against Thomas. As such, the Court grants Thomas's Motion for Summary Judgment [71].

### 4. Sheppards' Motion for Summary Judgement

#### a. IIED Claims

The Sheppards generally say that there is no evidence they committed acts as to Rich that would "evoke[ ] outrage or revulsion in civilized society." *Pierce v. Cook*, 992 So. 2d 612, 626–

---

[6] It merits note that Patricia's comments during the May 2014 recorded conversation also support Thomas's contention that she severed ties because Rich had written the checks and challenged her about the Schwab accounts. During that conversation, Patricia states: "It was a roller-coaster—it was so bad. I thought I could put up with it, but he just sucked his last tit too long. He really did. Over . . . being greedy." Recorded Conversation [107-8] at 4.

27 (Miss. 2008).  If a jury believes their version of events, then they would be correct.  But there are two sides to the story.

According to the Sheppards, Rich was a manipulative money grubber who lined his pockets with their mother's money until she saw him for what he was and decided to shut him out of her life.  The Sheppards merely honored her wishes after that by keeping Rich away.  Rich says that Patricia was the love of his life, he was devoted to helping her and her children to his own financial detriment, and the children manipulated their mother to shut him out, most prominently in her final days when they prevented him from seeing Patricia on her deathbed.

Frankly, many of the accusations Rich makes in his lengthy and often self-serving affidavit would not be sufficient to survive summary judgment.  For instance, he frequently explains his superior understanding of Patricia's medical, financial, and emotional needs and complains that the Sheppards did not embrace his opinions as to what was best for their mother.  Even if true, such conduct would not constitute a tort against Rich.  As for steps the Sheppards may have taken to have Patricia remove Rich from her will, those issues will be resolved during probate and do not constitute an independent tort for IIED given this record, which shows efforts to manipulate on both sides.[7]   These were difficult and emotional times, and Rich has not shown that the alleged conduct was totally intolerable in a civilized society.

There is, however, some question whether the Sheppards denied Rich access to Patricia in her final days.  Most notably, Patricia's last communication to Rich was a text message in which she said, "Help."  Defs.' Mem. [72] at 12 (citing Rich Dep. [71-5]).  That would suggest that she wanted to see him.  Yet, there is no dispute that as Patricia's competency faded, the

---

[7] For purposes of this Order, the Court will not give a blow-by-blow account of that evidence, but the parties' briefs catalog the various facts surrounding Patricia's estate.

Sheppards were with her and kept Rich from seeing her.  *See* Thomas Dep. [71-2] at 23; V. Sheppard Dep. [71-3] at 12–13, 25–26.  While they have countervailing evidence supporting their reasons, under Rule 56 the Court must view the record in the light most favorable to the non-movant, i.e., Rich, and may not weigh the evidence.  On that basis, the Court finds that the IIED claim survives.[8]

### B.     NIED

The Sheppards further assert as to Rich's NIED claim that Rich has failed to establish that they owed him any duty.  *See* Defs.' Mem. [74] at 8–9.  While the Sheppards' argument has evolved slightly from the motion-to-dismiss stage, the Court finds that "they [continue to] provide neither authority nor analysis to show that they owed Rich no duty to act as a reasonably prudent person in their actions towards him."  Order [31] at 11–12 (citing *Dr. Pepper Bottling Co. of Miss. v. Bruner*, 148 So. 2d 199, 201 (Miss. 1962)).  Accordingly, the Court denies summary judgment as to Rich's NIED claim.

### 5.     Sheppards' Counterclaim

The Sheppards also seek summary judgment on their counterclaim for conversion.  As already discussed, there is no dispute Rich opened Patricia's mail from Schwab on April 10;

---

[8] This case deals with raw human emotions that are at times messy.  Having now read dozens of briefs and hundreds of pages of record evidence, it is clear to the Court that everyone involved has at times expressed conflicting opinions regarding these complex relationships.  While those fluctuating feelings are understandable under the circumstances, it makes it difficult to evaluate the cold record of what happened at the end of Patricia's life, so the Court is erring on the side of caution in allowing this claim to move forward.  *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'") (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242 (1986)).

discovered that he had been removed as a beneficiary on the accounts; and then, without express permission or notice to Patricia, accessed the accounts online and named himself as 98% beneficiary. On this primary basis, the Sheppards say their conversion claim has been established as a matter of law.

Rich does not offer much in response, sticking with conclusory assertions rather than legal authority. He generally says in his summary-judgment response that no one told him his power of attorney had been stripped before he made the change, so he was under the belief that he was authorized to overrule Patricia's decision and make himself the beneficiary. But Rich fails to address the fact that even when he did have power of attorney, he shared it with Bud and Victoria. POA [101-2] at 28. Moreover, "[i]t is fundamental law that an agent owes his principal absolute good faith and fidelity, and he cannot in the exercise of his authority as agent acquire property or interest therein rightfully belonging to his principal without full disclosure and free consent of his principal." *McKinney v. King*, 498 So. 2d 387, 388 (Miss. 1986); *see In re Estate of Johnson v. Johnson*, 237 So. 3d 698, 707 (Miss. 2017), *reh'g denied* (Mar. 15, 2018). Rich does not address this issue either.

That said, Rich's delinquent Motion/Supplemental Response did seek dismissal of this counterclaim based on the assertion that the Sheppards are not the real parties in interest under Rule 17(a). *See* Mot./Supp. Mem. [108]. He also argued that the claim should be stayed pending resolution of the probate case in chancery court. As noted above, Rich's motion was untimely, and he failed to provide a substantive legal memorandum exploring his legal defenses. Accordingly, the motion was denied without prejudice. But the Court's independent research suggests that there may be something to the issues, so it would be improvident to grant summary

judgment at this time.   The motion is denied without prejudice and will be discussed at a status conference.

V.      Conclusion

There were a number of arguments in the various briefs that the Court considered but declined to address in this Order.  Those not specifically addressed would not have changed the outcome.  For the foregoing reasons, Thomas's Motion for Summary Judgment [71] is granted; the Sheppards' Motion for Summary Judgment [73] is denied without prejudice; Rich's Motion/Supplemental Response [108, 109, 110] is denied as to the jurisdictional arguments; Defendants' Motion to Strike Rich's Motion/Supplemental Response [120] is granted without prejudice to Rich's right to seek leave to file a delinquent motion to dismiss as to the Sheppards' counterclaims; Defendants' motions to strike [111, 113, 114, 115] are granted to the extent that the Court has not considered inadmissible evidence, but they are denied to the extent they ask for an order actually striking the affidavits; Rich's motions to strike [121, 127] are denied; and finally, motions [145, 149] are considered moot.   The remaining parties are instructed to contact the Court's courtroom deputy within seven days to set this case for an in-chambers status conference. Thomas is relieved of the obligation to attend the status conference.

**SO ORDERED AND ADJUDGED** this the 11th day of September, 2018.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE